Jamari SALLEH, Appellee

v.

Warren CHRISTOPHER, Secretary of State, Appellant.

No. 95–5271.

United States Court of Appeals, District of Columbia Circuit.

Argued April 15, 1996.

Decided June 14, 1996.

R. Craig Lawrence, Assistant United States Attorney, argued the cause, for appellant, with whom Eric H. Holder, Jr., United

States Attorney, Washington, DC, was on the briefs. Susan A. Nellor entered an appearance.

Stephen L. Spitz, argued the cause and filed the brief, Washington, DC, for appellee.

Sharon L. Papp, was on the brief, Washington, DC, for amicus curiae.

Before: SILBERMAN, BUCKLEY, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant, the Secretary of State, argues that he has the authority to discharge Jamari Salleh, a Foreign Service Officer, even though the Foreign Service Grievance Board concluded that cause for the discharge had not been established at a § 610(a)(2) hearing. Since the Board's decision under the Foreign Service Act is final, the district court opinion reinstating Salleh and awarding back pay is affirmed.

## I.

Jamari Salleh was hired by the State Department in 1981 as a Foreign Service Officer and was subsequently granted career status. In 1989, she was indicted for submitting falsified claims for reimbursement to the U.S. Government to which she pleaded guilty and received a three-year suspended sentence, four years probation, a $5,000 fine, and was ordered to return the illegally obtained money. The court refused to decide whether Ms. Salleh should be required to resign from the Foreign Service, noting that the "proper decision-maker in that connection should be the Department of State."

After her conviction, the Acting Director General of the Foreign Service proposed that she be discharged. At Ms. Salleh's request, the Foreign Service Grievance Board conducted an evidentiary hearing on the discharge proposal. The Board concluded that discharging Ms. Salleh would violate § 501 of the Rehabilitation Act of 1973 since Ms. Salleh's criminal conduct stemmed from her alcoholism, a disability under the act, and, even if it were not, discharge would still be inap-

propriate given the effect drinking had on her behavior. The Secretary of State, Warren Christopher, issued an order in June, 1993 (some 13 months later) concluding that he "possesses authority to review conclusions of the Foreign Service Grievance Board, and to reach a contrary conclusion if merited." The Secretary thus directed Ms. Salleh's discharge without pursuing judicial review of the Board's decision. The Secretary asserted that "the charged employee's conduct in committing these crimes is prejudicial to the U.S. Government and the Department of State, and that her continued employment does not promote the efficiency of the Foreign Service." In response, the Board expressed the view that its decision was final and could not be ignored by the Secretary.

Ms. Salleh filed an action under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (1994), and the Foreign Service Act of 1980, as amended, 22 U.S.C. § 3901 *et seq.* (1994), seeking reinstatement, back pay, a declaratory judgment that the Secretary's action was *ultra vires*, injunctive relief, a writ of mandamus directing the Secretary to comply with the Board's decision, and any other appropriate relief. On cross-motions for summary judgment, the district court concluded that the Board's decision was final and therefore the Secretary's discharge of Ms. Salleh was illegal. The district court subsequently ordered the State Department to reinstate Ms. Salleh and provide her with full back pay and other benefits retroactive to the date of her discharge.

## II.

The government contends that the language and structure of the Foreign Service Act provides the Secretary with authority to overrule the Board and discharge an employee such as Ms. Salleh. Both parties agree that whether the government is correct or not depends on the proper interpretation of § 610(a) of the Foreign Service Act which states:

**(a) Authorization of Secretary; hearing prior to separation; waiver of hearing**

(1) The Secretary may separate any member from the Service for such cause

as will promote the efficiency of the Service.

(2) A member of the Service who ... is assigned to a salary class in the Foreign Service Schedule and ... is serving under a career appointment ... shall not be separated from the Service under this section until the member has been granted a hearing before the Foreign Service Grievance Board *and the cause for separation established at such hearing,* unless the member waives in writing the right to a hearing. *If such cause is not established at such a hearing, the Grievance Board shall have the authority to direct the Department to pay reasonable attorneys fees to* the extent and in the manner provided by section 4137(b)(5) of this title. The hearing provided under this paragraph shall be in accordance with the hearing procedures applicable to grievances under section 4136 of this title and shall be in lieu of any other administrative procedure authorized or required by this or any other law.

22 U.S.C. § 4010 (1994) (emphases added). Ms. Salleh was clearly entitled to a § 610(a)(2) hearing as she was assigned to a salary class in the Foreign Service Schedule and was serving under a career appointment. But what is the Board's function in such a hearing? The government relies on the "plain meaning" of § 610(a)(1) as providing the Secretary with plenary authority to discharge employees such as Ms. Salleh. Section 610(a)(2), it is argued, merely provides a member of the Foreign Service, if she so chooses, an opportunity to present her side at the hearing. The government concedes that the grounds for the discharge must be "established at such hearing," but it claims that it is up to the Secretary to ultimately decide whether such a showing has been made. The Board's role is to merely preside over the hearing and make recommendations to the Secretary. The Board, on the other hand, reads § 610(a)(2) as delegating to it the final authority to determine whether the Secretary's decision is justified.

The government insists the Secretary's interpretation of § 610(a) is entitled to *Chevron* deference since the dispute between Ms. Salleh and the Secretary (really, the Board and the Secretary) involves the scope of *his* authority under § 610(a)(1). While it is of course true that this dispute involves the scope of the Secretary's power under § 610(a)(1), it is equally true that the scope of the *Board's* authority under § 610(a)(2) is at stake. The issue can be formulated either way. The government relies on *Molineaux v. United States,* 12 F.3d 264 (D.C.Cir.1994), a case in which we did defer to the Secretary's interpretation of the Foreign Service Act. But *Molineaux* did not create a general rule that the Secretary, as opposed to the Board, is always entitled to deference as to his interpretation of the statute. *Molineaux* involved a challenge to the Secretary's compliance with § 601(c)(2)(C), 22 U.S.C. § 4001(c)(2)(C) (1994), which specifically directs the *Secretary* to determine the proper number of promotions into the Senior Foreign Service based upon various factors. Moreover, there was no disagreement in *Molineaux* between the Board and the Secretary as to the statute's meaning. *Id.* at 266–67. Here, we have arguably inconsistent grants of authority to the Secretary and the Board. To defer to the government is virtually to assume that Congress delegated the disputed authority to the Secretary—which is the very issue on the merits.

The premise of *Chevron* deference is that Congress has delegated the administration of a particular statute to an executive branch agency. *See Adams Fruit Co. v. Barrett,* 494 U.S. 638, 649, 110 S.Ct. 1384, 1390, 108 L.Ed.2d 585 (1990). From that premise is implied the additional delegation to reconcile ambiguities in statutory language. Where, as here, the *premise* is in dispute because two executive branch entities (in this case a department and an independent adjudicatory body) claim conflicting administrative authority, it would be inappropriate to defer to either's statutory interpretation as to the issue of basic authority. Although we have recognized that *Chevron* deference applies to an agency's interpretation of its "jurisdictional" authority, *see Oklahoma Natural Gas Co. v. FERC,* 28 F.3d 1281, 1283–84 (D.C.Cir. 1994), we have never deferred where two

competing governmental entities assert conflicting jurisdictional claims.[1]

This case is analogous to those decisions of ours that have declined to defer to an agency's interpretation of a statute when more than one agency is granted authority to interpret the same statute. *See, e.g., Rapaport v. U.S. Dept. of Treasury,* 59 F.3d 212, 216–17 (D.C.Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 775, 133 L.Ed.2d 727 (1996); *Benavides v. U.S. Bureau of Prisons,* 995 F.2d 269, 272 n.2 (D.C.Cir.1993); *Professional Reactor Operator Soc. v. U.S. NRC,* 939 F.2d 1047, 1051 (D.C.Cir.1991). In such cases, it cannot be said that Congress implicitly delegated to one agency authority to reconcile ambiguities or to fill gaps, because more than one agency will independently interpret the statute.[2] Similarly, here both the Secretary and the Board have been delegated authority under two sequential provisions of § 610(a). To determine their respective authority, the whole section must be interpreted. Therefore, insofar as they assert conflicting interpretations as to who has power to make the final decision on Ms. Salleh's discharge, we cannot defer to either.

### III.

■ The government emphasizes that § 610(a)(2)'s requirement that "cause for separation be established at such hearing" does not explicitly state *who* is to have the final word on whether this has occurred. It points out that before 1980 the Board of Foreign Service, under the Foreign Service Act of 1946, conducted pre-termination hearings in separation for cause cases even though the Board's decisions were merely advisory. And they were advisory despite a then-existing provision that an employee could not be separated unless cause had "been established at [the pre-termination] hearing." § 637(a), 22 U.S.C. § 1007(a) (1976). Another section of the 1946 Act, also deleted in 1980, however, indicates that under the old regime the Board's decisions were only preliminary. *See* § 211(b), 22 U.S.C. § 826(b) (1976) ("The Board of the Foreign Service shall make *recommendations* to the Secretary concerning ... the policies and procedures to govern the administration and personnel management of the Service") (emphasis added). A Senate Committee Report indicates Congress meant to change that situation in 1980. *See* S. REP. No. 913, 96th Cong., 2d Sess. 56, *reprinted in* 1980 U.S.CODE CONG. & ADMIN.NEWS . 4419, 4473 ("[T]he Foreign Service Grievance Board will conduct hearings under this section. That Board ... is the best qualified to *adjudicate* these cases. The Board of the Foreign Service has heretofore performed this function in an advisory capacity . . . .") (emphasis added).

More important, the actual language of the whole § 610(a) establishes that intent. Thus § 610(a)(2) itself authorizes the Board to direct the Department to pay the service member's attorney's fees "if such cause is not established at [the] hearing." We think it virtually inconceivable that Congress would have empowered the Board to award attorney's fees and yet have the precondition of that decision—lack of cause—constitute only a "recommendation" to the Secretary. It would be absurd for an employee subsequently discharged by the Secretary, as occurred here, to nonetheless receive attorney's fees for having prevailed before the Board in establishing no good cause for her termination. The government, recognizing the incongruity of that outcome, argues that the

---

1. *Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (not raised by the government but discussed at oral argument), is inapposite. In that case, the Court concluded that the Secretary of Labor's interpretation of his own regulation should be deferred to as against a conflicting interpretation by an independent adjudicatory body, the Occupational Safety and Health Review Commission. *Id.* at 157–58, 111 S.Ct. at 1179–80. But the merits issue at stake there—the proper interpretation of the regulation—is not the same as the question of which

agency has primary authority to interpret the regulation. The factors that the *Martin* Court identified as relevant to the *Chevron* analysis do not clearly favor the Secretary or the Board. *Cf. Molineaux v. United States,* 12 F.3d 264, 267 (D.C.Cir.1994).

2. If the authority is given to more than one executive *department,* the President may well be in a position to insist on one interpretation. *See Public Citizen v. Burke,* 843 F.2d 1473, 1477–78 (D.C.Cir.1988).

Board's authority to award attorney's fees is conditioned on the Secretary accepting the Board's lack of good cause finding. But there is nothing in the statutory language to even suggest that the Board's direction to the Secretary to pay attorney's fees is subject to the Secretary's approval. Moreover, that interpretation seems equally incongruous. The award of attorney's fees—particularly where, as here, it is discretionary—is normally thought of as akin to a sanction, and it would certainly be unique in our jurisprudence to provide that the sanctioning tribunal's order must be approved by the target of the sanction. The provision authorizing the Board to direct the Secretary to pay the service member's attorney's fees can only be consistent with a congressional perception that the Board was authorized to review the Department's (and thus the Secretary's) proposed action against the service member.[3]

Similarly, § 610(a)(3) grants the Secretary authority to suspend an employee *without* a *pre-termination hearing* "[w]here there is reasonable cause to believe that a member has committed a crime for which a sentence of imprisonment may be imposed, and there is a nexus to the efficiency of the Service." But the suspended employee must be reinstated with back pay if "cause for separation is not established at a hearing before the Board," language which is very similar to that used in the disputed § 610(a)(2) clause. And § 610(a)(5) explains that an employee suspended under § 610(a)(3) has available to her (with certain limitations) the procedures applicable to grievances outlined in Subchapter XI, which makes Board decisions final, *see* § 1107(c), 22 U.S.C. § 4137(c) (1994).[4] It

seems clear then that § 610(a)(3) visualizes that the Board will act as the final reviewing body for a suspension; that indicates the Board has the same role vis-a-vis a proposed termination.

The government warns that the Board's interpretation of § 610(a) would render the Secretary's authority under § 610(a)(1) to "separate any member from the Service for such cause as will promote the efficiency of the Service" meaningless. We think that argument is hyperbole. It might similarly be claimed that judicial review of the Secretary's decision impairs the Secretary's authority. Authority in an adjudicatory tribunal to review—even review *de novo*—an executive decision does not eliminate the authority to make the executive decision. After all, § 610(a)(1) parallels a Civil Service Act provision, 5 U.S.C. § 7513(a) (1994), which similarly authorizes an agency to separate a career Civil Service employee, including employees within the State Department, "for such cause as will promote the efficiency of the service." But review as to whether cause has been established can be exercised by the Merit System Protection Board. *See* §§ 7513(d), 7701(e)(1). The use of the same language in § 610(a)(1), which was passed after the analogous Civil Service provision, suggests Congress had the same general approach in mind.

It is important to understand, as we have previously emphasized, that § 610(a)(2) was intended to *increase* the protection Foreign Service Officers received. *See Costello v. Agency for Int'l Dev.*, 843 F.2d 540, 543 (D.C.Cir.1988); *Miller v. Baker*, 969 F.2d

3. The government explains that in practice the Secretary remains aloof from these matters until after the Board's decision. The Director General of the Foreign Service, as in this case, actually proposes the removal of a member. But when Congress used the term "Secretary" in § 610(a) it was—as it does usually—referring to the whole Department, all those who are subordinate to the Secretary and act in his name, as well as the Secretary. Congress did not put the Secretary himself in the independently superior position the Department would fashion.

4. It is interesting—although not of legal significance—that a 1991 amendment to § 610(a)(5), which narrowed the scope of the Board's review

of the Secretary's suspension, explains that it "increases the authority of the Secretary to suspend a member of the Foreign Service without pay, pending a *final decision* by the Foreign Service Grievance Board on that member's separation for cause.... [T]his enhanced authority is ... not intended to detract in any way from the authority of the Foreign Service Grievance Board *under [§ 1107]* ..." H.R. Rep. No. 53, 102nd Cong., 1st Sess. 53 (1991), *reprinted in* 1991 U.S.Code Cong. & Admin News 384, 407 (emphases added). We of course do not rely on this expression of a subsequent Congress. *See United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960).

1098, 1102 (D.C.Cir.1992). This provision ensures, for those eligible for its protections, that employees are not discharged without first receiving a hearing. It guarantees "that the Foreign Service Officer's grievance must be heard and decided *prior* to termination." 843 F.2d at 544 (emphasis added). This is an assurance that employees would not have if only the usual grievance machinery was available. (The law governing removal of career Civil Service employees does not provide for a pre-termination hearing before an independent adjudicatory body, *see* 5 U.S.C. § 7513(a) (1982)). Yet if the government's construction were accepted, § 610(a) would dramatically *decrease* Foreign Service Officer protections if they were given a Board pre-termination hearing; they would thereafter be at the Secretary's disposal without the right to have their case reviewed by an independent adjudicatory body. That would mean that career status officials (Senior Foreign Service or the like) who were granted the added protection of a pre-termination hearing for misconduct would be actually worse off than lesser status employees.

Our decision in *Costello*, 843 F.2d 540, provides further support for Ms. Salleh's position. The Board had concluded, after a § 610(a)(2) hearing, that an employee could not be discharged for misconduct because of a lack of evidentiary support. But the Board thought it was without power to award attorney's fees under § 1107(b)(5), 22 U.S.C. § 4137(b)(5) (1994), which authorizes the Board to direct the State Department to pay reasonable attorney's fees to a grievant if the Board "finds that the *grievance* is meritorious" (emphasis added). (Section 610 was subsequently amended to explicitly provide the Board with this power.) The definition of "grievance" does not cover "any complaint or appeal where a specific statutory hearing procedure exists ...." 22 U.S.C. § 4131(b)(4) (1994). The Board reasoned that a § 610(a)(2) hearing was such a specific statutory hearing procedure and, according-

ly, § 1107(b)(5) was inapplicable. We rejected the Board's construction as not "rational and consistent with the statute" holding that the "hearing" referred to in § 610(a)(2) is not a separate procedure but is rather a standard grievance hearing. 843 F.2d at 543. It would appear that the same reasoning makes § 1107(c) applicable to § 610(a)(2) hearings. This section provides (with one exception not applicable to Ms. Salleh) that "decisions of the *Board* under this subchapter shall be *final*, subject only to judicial review as provided in section 4140 of this title" (emphases added). The subchapter referred to, "Subchapter XI—Grievances," establishes the grievance procedures available to Foreign Service Officers. *Id.* If the Board's decision in *Costello* was a decision concerning a "grievance" for purposes of § 1107(b)(5), then it would seem to follow that the Board's decision here is similarly a decision concerning a grievance, thereby falling under § 1107(c). The statutory definition of "grievance," except for certain specifically enumerated exceptions, is for *all* Subchapter XI hearings, *see* § 4131(a)(1)—and it follows that the definition of "grievance" for § 1107(b)(5) would be the same for § 1107(c).

The government suggests that our reasoning in *Costello* was placed into question by the subsequent decision in *Miller*, 969 F.2d 1098. In *Miller*, we held that the Board could suspend a § 4011 termination[5] by the Secretary when that termination was allegedly related to inaccurate evaluation reports being challenged through the grievance process. *Id.* at 1102. In rejecting the argument that the reference in § 4011 to § 610(a)(2) implied that the § 610(a)(2) hearing was the only limitation on the Secretary's § 4011 termination power, we explained that "[t]his argument might get somewhere if anything in section 4011, including the excepting reference to section [610(a)(2)], *restricted or even related* to a service member's ability to file a grievance." *Id.* at 1101 (emphasis added). In elaborating on this line of thought, we

---

**5.** Section 4011 provides:

Except as provided in [§ 610(a)(2)] of this title, the Secretary may terminate at any time the appointment of any member of the Service serving under a limited appointment who is in the Senior Foreign Service, who is assigned to

a salary class in the Foreign Service Schedule, or who is a family member of a Government employee serving under a local compensation plan established under section 3968 of this title.

22 U.S.C. § 4011 (1994).

stated offhandedly that § 610(a)(2) "hearings are even excluded from the statutory definition of the term 'grievance,'" *id.* at 1102, which appears inconsistent with our holding in *Costello.* The important point, however, is that the *Miller* court relied on the underlying notion that § 610(a)(2) did *not restrict* a service member's ability to file a grievance.

In short, the language of § 610(a) and structure of the Foreign Service Act make clear that a Board decision rendered after a § 610(a)(2) hearing is final. The district court is

*Affirmed.*