# In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 02-3529 & 02-4267

CAROLINE WILLIAMSON,

*Plaintiff-Appellant,*

*v.*

INDIANA UNIVERSITY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 99-1663 C-Y/S—**Richard L. Young**, *Judge.*

_____

SUBMITTED AUGUST 12, 2003[*]—DECIDED SEPTEMBER 23, 2003

_____

Before MANION, ROVNER, and DIANE P. WOOD, *Circuit
Judges.*

DIANE P. WOOD, *Circuit Judge.* Caroline Williamson
taught history as a nontenured assistant professor at Indi-
ana University (IU) until her teaching contract expired and
was not renewed. She sued IU under federal and state law,
essentially claiming that it terminated her employment on

_____

[*] After an examination of the briefs and the record, we have
concluded that oral argument is unnecessary. Thus, the appeal is
submitted on the briefs and the record. *See* Fed. R. App. P.
34(a)(2).

account of her sex and without due process. The district court granted summary judgment for IU, and we affirm.

Williamson was appointed to IU's History Department in August 1989, where she was to teach courses in ancient history. The term of her initial appointment was for three years, but she was required to complete six years as an assistant professor before becoming eligible for tenure. According to Williamson's letter of appointment, a tenure recommendation would be based upon her performance in teaching, research, and service.

After her initial appointment ended, Williamson continued teaching at IU under a series of one-year reappointments lasting from 1992 until May 7, 1998, when she received notice that she would not be reappointed. During these years, Williamson took several leaves of absence, which extended the number of calendar years necessary before she would become eligible for tenure. In 1996, a History Department committee advised her to prepare a dossier for its review in determining whether to grant tenure. Williamson instead asked for a delay in the tenure review and thereafter took sick leave for the fall semester of 1996.

Williamson finally completed her tenure dossier in the fall of 1997, and the History Department Tenure Review Committee voted against recommending her for tenure and promotion. The Committee stated that Williamson's ratings of "highly satisfactory" in teaching and research, and "satisfactory" in service, did not meet the requirement that a professor achieve an "excellent" rating in at least one category. Moreover, the Committee noted that Williamson had not yet published a manuscript, as was generally required for tenure, although she had had a manuscript in progress since 1992. After the Committee's decision was issued, Williamson submitted a draft manuscript, but the Committee again recommended that tenure be denied.

Thereafter, Williamson sought review by the tenured history professors, the Chair of the Department of History, the College of Arts and Sciences Tenure Review Committee and the Dean of the College of Arts and Sciences, all of whom concurred in the decision to deny tenure. Finally, Williamson filed a grievance with the Faculty Review Board, which held a two-day hearing and concluded after reviewing hundreds of pages of evidence that the denial of tenure had been appropriate. After exhausting all available grievance proceedings, Williamson filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on May 5, 1999.

After the EEOC closed its case, Williamson filed this lawsuit under Title VII of the Civil Rights Act of 1964, as well as 42 U.S.C. §§ 1983 and 1985 and several state-law provisions. Early on, the district court granted partial summary judgment for IU and rejected Williamson's Title VII claim as untimely. The court, however, permitted substantial discovery before also granting summary judgment for IU on the remaining federal claims and declining to exercise supplemental jurisdiction over the state-law claims. Williamson filed an appeal, which we have docketed as Case No. 02-3529.

Defense counsel then learned that Judge Young's brother-in-law had been appointed as an IU Trustee on January 1, 2002. On September 30, 2002, defense counsel wrote Judge Young and Williamson advising them of this fact. Williamson then moved to vacate the judgment under Federal Rule of Civil Procedure 60(b) based upon the appearance of bias allegedly arising from this familial relationship. The district court denied Williamson's motion, and she filed a second appeal docketed here as Case No. 02-4267. (Under the procedure we approved in *Boyko v. Anderson*, 185 F.3d 672, 675 (7th Cir. 1999), it was possible for the district court to *deny* a Rule 60(b) motion even though the appeal in No. 02-3529 was pending. The denial did not alter the

judgment that was under appeal and thus was no threat to the appellate process. *Id.*) We consolidated the appeals.

On appeal, Williamson first attacks the district court's grant of summary judgment on her Title VII and civil rights claims. We review summary judgment *de novo*, applying the same standard as the district court. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing summary judgment, we draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Furnish v. SVI Sys., Inc.*, 270 F.3d 445, 448 (7th Cir. 2001). But "[i]f the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" *Lewis v. Holsum of Ft. Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 323).

With respect to her Title VII claim, Williamson argues that the district court wrongly concluded that her EEOC charge was untimely. A claimant may file a charge of discrimination with the EEOC within a 180-day window permitted under Title VII. See 42 U.S.C. § 2000e-5(e) (charge must be filed with EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred"). The 180-day period begins to run on the date that the employee is notified of the adverse employment decision. *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980). Moreover, because the decision not to reverse an adverse employment decision is not a fresh act of discrimination, an employee cannot toll the limitations period by pursuing grievance proceedings. *Id.; Sharp v. United Airlines, Inc.*, 236 F.3d 368, 373 (7th Cir. 2001) (quoting *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir. 1992)).

Here, Williamson's charge was untimely because she learned on May 7, 1998, that she would not be reappointed, but she did not file an EEOC charge until May 5, 1999. She makes a vague estoppel claim that IU somehow acted to prevent her from filing sooner, but her brief on appeal does not explain how this happened. If what she means to invoke is equitable estoppel, she cannot succeed, because she presented no evidence that either IU or the EEOC took active steps to prevent her from bringing her charge within the allotted time. See *Hentosh v. Herman M. Finch Univ. of Health Sci./The Chicago Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999); *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267-68 (7th Cir. 1995). Equitable tolling is equally unavailable; we agree with the district court that Williamson failed to offer a valid justification for waiting a year to file a charge of discrimination with the EEOC once she received notice of the decision not to reappoint her. *Id.*

Her claims under §§ 1983 and 1985 were also properly dismissed, though we rely on a more straightforward reason than the one the district court used. Williamson named only IU as a defendant in this action; she failed to join any individual defendants who allegedly participated in the decision to deny her tenure and end her employment. On appeal, Williamson argues that the district court should have adopted the position that persons named in the text of a *pro se* complaint are deemed to be defendants even though they are not specifically named as such, relying on a footnote in *Bavido v. Apfel*, 215 F.3d 743, 748 n.3 (7th Cir. 2000). In our view, however, the district court correctly refused to do so. First, such a rule (if there is one, which we do not decide here) would at a minimum have to be reconciled with the relation back restrictions of Fed. R. Civ. P. 15(c). But more importantly, Williamson was represented by counsel at the outset of her case, and it was counsel who prepared her complaint. As for IU itself, Williamson's civil rights claim is doomed by the fact that state universities

are entities that are considered part of the state for § 1983 analysis. See *Powers v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000); *Kaimowitz v. Bd. of Trustees of Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1991). No cognizable claim under the civil rights statutes can be brought against a state, because it is not a "person" for purposes of those provisions. *Will v. Michigan Dep't of Human Rights*, 491 U.S. 58, 70-71 (1989) (discussing § 1983); *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 265 (7th Cir. 1999) (discussing §§ 1983 and 1985).

Given the appropriateness of granting summary judgment for IU on Williamson's federal claims, we need not reach most of her other arguments. Williamson's argument about discovery, for example, is no longer relevant. In addition, Williamson waived the arguments she would now like to present by failing to object in the district court to the magistrate judge's handling of the discovery process. See 28 U.S.C. § 636; Fed. R. Civ. P. 72(a). Moreover, given its dismissal of Williamson's federal claims, the district court did not abuse its discretion by declining to exercise supplemental jurisdiction over her state causes of action. See 28 U.S.C. § 1367(c)(3); *Kennedy v. Schoenberg, Fischer & Newman, Ltd.*, 140 F.3d 716, 728 (7th Cir. 1998).

Williamson's challenge to the district court judge's refusal to recuse himself in response to her Rule 60(b) motion, however, requires our attention. That motion, which was filed as soon as Williamson learned of the judge's familial relationship with an IU Trustee, but after final judgment in the case, sought the judge's after-the-fact disqualification. In her moving papers, Williamson relied solely on 28 U.S.C. § 144, which requires a showing of actual bias. The district court found that no such showing had been made, and Williamson has now abandoned that argument on appeal. Instead, she argues that Judge Young should have recused himself *sua sponte* under 28 U.S.C. § 455(b)(5), which deals only with the appearance of impropriety.

As the Supreme Court noted in *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988), "[s]ection 455 does not, on its own, authorize the reopening of closed litigation." *Id.* at 863. Litigants wishing to raise a late challenge under § 455 must instead use the procedures provided in Rule 60(b). *Id.* This in turn means that our review proceeds under the familiar standards that govern a denial of Rule 60(b) relief, which requires a showing of "exceptional circumstances," *Talano v. Northwestern Med. Faculty Found.*, 273 F.3d 757, 762 (7th Cir. 2001). We note as well that in this unusual situation, our normal rule that the "denial of a motion for recusal based on the appearance of impropriety can only be challenged with a writ of mandamus," see *Tezak v. United States*, 256 F.3d 702, 717 n.16 (7th Cir. 2001), is superseded by the Supreme Court's express direction to turn to Rule 60(b) instead.

In reviewing a district court's denial of a Rule 60(b) motion, we ask only whether the judge has abused his or her discretion. *Deboer v. Village of Oak Park*, 267 F.3d 558, 565 n.4 (7th Cir. 2001). Accordingly, even if Judge Young should have recused himself under § 455, Rule 60(b) is not automatically justified if his error was harmless. See *Liljeberg*, 486 U.S. at 862. In making the harmless error determination, we consider the risk of injustice to the parties, the risk of injustice in other cases, and the risk of undermining the public's confidence in the judicial process. See *id.* at 863.

None of these factors persuade us that Judge Young's decision not to recuse himself after final judgment constituted reversible error. First, focusing on fairness to these parties, we conclude that even if Judge Young should have recused himself, his error in not doing so would have been harmless. Williamson's motion seeking disqualification of Judge Young was not filed until the entire proceeding had been concluded and a notice of appeal had been filed. On appeal, this court reviews the grant of summary judgment *de novo*, see *Celotex*, 477 U.S. at 322, and therefore Williamson has

received a full review by an impartial panel, *In re Continental Airlines Corp.*, 901 F.2d 1259, 1263 (5th Cir. 1990). Likewise, the risk of injustice in other cases and concern for public confidence are not implicated by these facts. Because we have concluded that Williamson's claims raise no genuine issues of material fact and were properly dismissed as a matter of law, the act of vacating the district court's judgment would be counterproductive, inefficient, and would serve only to weaken public confidence by undermining the finality of judgments. See *Continental Airlines Corp.*, 901 F.2d at 1263. The judgment of the district court is therefore AFFIRMED.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*
