In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1848

IN RE: CITY OF MILWAUKEE, *et al.*,

*Petitioners.*

Petition for Writ of Mandamus
to the Eastern District of Wisconsin.
Nos. 13-cv-920-JPS, 14-cv-1224-JPS, 14-cv-1548-JPS,
15-cv-311-JPS —**J.P. Stadtmueller**, *Judge*.

SUBMITTED MAY 20, 2015 — DECIDED JUNE 9, 2015

Before WOOD, *Chief Judge*, and POSNER and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. The City of Milwaukee is defending a number of lawsuits brought by scores of plaintiffs alleging that its police officers have conducted unconstitutional stops and searches, including strip-searches and body-cavity searches. Judge Stadtmueller has been assigned to preside over several of these cases. Milwaukee, asserting that some of the judge's comments in opinions and conferences in the related cases raise reasonable questions about his impartiality, moved for his recusal under 28 U.S.C. § 455(a). The judge declined. *Hardy v. City of Milwaukee*, —

F. Supp. 3d —, No. 13-CV-769, 2015 WL 1609159 (E.D. Wis. April 10, 2015).

Milwaukee and its police chief now seek to force the judge aside by petitioning for a writ of mandamus. (For convenience we refer to both petitioners as Milwaukee or the city.) The plaintiffs in the underlying cases have filed a joint response arguing that the petition should be denied. We conclude that Milwaukee's petition for a writ of mandamus must be denied.

A mandamus petition is the proper way to challenge the denial of a recusal motion. See *In re Sherwin-Williams Co.*, 607 F.3d 474, 477 (7th Cir. 2010) (per curiam); *United States v. Diekemper*, 604 F.3d 345, 352 (7th Cir. 2010). We independently assess questions raised about a judge's impartiality from "the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Sherwin-Williams*, 607 F.3d at 477, quoting *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 541 U.S. 913, 924 (2004) (Scalia, J., in chambers) (citations and emphasis omitted); see also *In re United States*, 572 F.3d 301, 310 (7th Cir. 2009) ("[W]e decide … whether a reasonable, well-informed observer could question the Judge's impartiality.").

Milwaukee argues that five statements reasonably call the judge's impartiality into question. All five statements were made during the course of litigation. This is significant because "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555

(1994). Rarely will a judge's comments show such favoritism or antagonism unless those comments reflect at least some reliance on an "extrajudicial source." *Id*.

Only one of Judge Stadtmueller's statements appears to involve an extrajudicial source, so we start there. *Hardy v. City of Milwaukee*, No. 13-CV-769, was one of the first cases to go to trial. The jury found that the plaintiff had been illegally stopped and arrested but ruled in favor of defendants on a claim for an illegal search. The jury awarded $6,000 in compensatory damages and $500,000 in punitive damages. Judge Stadtmueller reduced the punitive damages to $54,000, noting that no evidence at trial showed that the defendant officers had engaged in "repeated acts of this sort." That finding was followed by a footnote:

> However, with that said, it is apparent that [the Milwaukee Police Department] has opted to continue the sort of illegal stops that Mr. Hardy was subject to. MPD Chief Edward Flynn has made clear that one of his prerogatives is encouraging large amounts of pedestrian stops, regardless of the reasons. In criticizing *Floyd v. City of New York*, the Southern District of New York case finding the New York Police Department's stop-and-frisk tactics illegal, Chief Flynn stated, "That's what worries us about what's happening in New York. It would be a shame if some people decided to put us back in our cars just answering calls and ceding the streets to thugs." Heather MacDonald, "How to Increase the Crime Rate Nationwide,"

*The Wall Street Journal* (June 11, 2013) (quoting previous Flynn statements to *L.A. Times*).

Milwaukee argues that the comment that Chief Flynn was encouraging illegal stops is not supported by the substance of the cited newspaper article and thus that the judge's conclusions bring his impartiality into question.

Milwaukee does not contend that Chief Flynn was misquoted in criticizing the *Floyd* decision. In *Floyd*, the Southern District of New York found that the New York Police Department's stop-and-frisk policies had violated Fourth and Fourteenth Amendment rights through a policy of illegal stops and frisks, particularly of people of color. *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013). The *Floyd* decision was controversial and widely publicized, and New York City eventually dropped its appeal. See *Floyd v. City of New York*, 770 F.3d 1051 (2d Cir. 2014) (denying intervention and granting motion to dismiss appeal).

Taken literally, the judge's footnote about Chief Flynn's comment was not out of place. The jury in the *Hardy* case found that the individual officers had violated Mr. Hardy's rights. Finding no evidence that those individual officers had engaged in other illegal stops, though, the judge cut the punitive damage award by nearly 90 percent. Putting the situation of the individual officers in context, the judge then cited Chief Flynn's criticism of the *Floyd* decision.

A police force that wishes to replicate the New York City policy can be described fairly, though not conclusively, as intending to carry out a policy of illegal stops. The district court decisions in *Floyd*, in New York, or *Hardy* or other cases in Milwaukee, cannot resolve *conclusively* the legality of

one stop or a broader policy. Both decisions were subject to appeal but were settled without appellate decisions on the merits. We do not view the judge's comment setting the *Hardy* decision in a larger context as showing that the judge has abandoned his duty to decide each case fairly on its own merits.

Even if the judge's footnote read too much into the chief's comments, the argument for recusal also fails to grapple with the context within which the footnote appears. A reasonable observer is well informed about "all the surrounding facts and circumstances." *Sherwin-Williams*, 607 F.3d at 477, citing *Cheney*, 541 U.S. at 924 (Scalia, J., in chambers); see also *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990) ("An objective standard is essential when the question is how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person."). Judge Stadtmueller's apparent concerns about Milwaukee's policing tactics did not prevent him from ruling in the city's favor. We cannot overlook the fact that the footnote appears in an order that found for the officers on an important issue and reduced the jury's punitive damages award by nearly 90 percent. A reasonable observer reading the footnote would understand that context and would not question whether Judge Stadtmueller can preside fairly.

We turn to the remaining four statements. Because none of them involve an extrajudicial source, Milwaukee's burden is even heavier. Only in "the rarest circumstances" will judicial statements show "the degree of favoritism or antagonism required … when no extrajudicial source is involved." *Liteky*, 510 U.S. at 555.

First, in the same *Hardy* order that reduced the punitive damages award, the judge described a particular police officer as "MPD's primary strip-search offender" and said that the officer "is now serving a prison sentence as a result of his criminal actions." Milwaukee says that these comments show the judge's bias towards the officer because the officer "maintains his innocence and entered no contest (*nolo contendere*) pleas to several counts of misconduct in office and illegal searches … to avoid trial risk." Milwaukee also argues that the judge inaccurately described testimony about a search conducted by the officer.

These comments do not show deep-seated antagonism or other bias calling for recusal. Even if the officer maintains his innocence, he was convicted and sent to prison on his pleas of no contest. Describing him as an "offender" was both entirely accurate and relevant to the judge's factual findings about the particular events and testimony in the *Hardy* case. The judge's comment did not reflect judicial bias.

On the record before us, we will not attempt to determine whether the judge's description of testimony about the specific actions of that officer might have been inaccurate. The judge presided over the trial and knows the record better than we do. If a district judge makes a clearly erroneous factual finding that affects the outcome of a case, we will consider such arguments in a direct appeal. Despite our best efforts, though, federal judges sometimes make mistakes or see factual or legal issues differently. Such ordinary errors or disagreements provide a basis for appeal but not for recusal. See *In re Mason*, 916 F.2d at 386 (noting importance of objectivity when evaluating alleged judicial bias).

The second statement was made in the final pretrial conference in *Bohannon v. City of Milwaukee*, 13-CV-1224:

> If the facts are on your side, you're going to prevail; but unfortunately, in these cases from what the Court has seen thus far, the City has got a very, very tall order to be an effective defender of what occurred particularly when you see what occurred in this and other cases if only what's come through the criminal justice system… . And, eventually, it comes at a very, very high cost whether it's morale in the police department, whether it's the citizens' respect for the rule of the law in the community, that there are those in [the] City that want to defend this sort of conduct. It's plainly unconscionable. That's the end of the discussion. So it's time to roll up the sleeves and get real serious about [where] we are going with this … .

In the city's view, the judge effectively said that it is unconscionable for the city to defend the lawsuits. We do not read the comment the same way. The antecedent of "It" in "It's plainly unconscionable" appears to be the alleged police conduct at issue rather than the city's defense of the lawsuits. "Unconscionable" is not an unfair description of the alleged conduct, based on what the judge had learned about it on the bench. In any event, as Judge Stadtmueller recognized in the quoted passage and other comments in the same conference, it will be his duty and the duty of juries and other courts to evaluate the law and the evidence fairly in each of the cases as they are tried or otherwise presented for decision. Even a sharply critical comment about what the judge

has learned in presiding over related cases does not mean the judge cannot be impartial.

As part of that same larger context for the "unconscionable" comment, plaintiffs' counsel also point out, in the same conference the judge criticized their actions as well. They view his criticisms as inaccurate and unjustified. But federal courts resolve significant disputes that often generate strong feelings and views on all sides. A judge's frank assessments in conferences are not guaranteed to be infallible, but they can be helpful in coping with attorneys' sometimes unrealistic devotion, on all sides, to their clients' causes.

The judge said here that Milwaukee, though it may have a "very, very tall order," will win if the facts are on its side. As we noted with regard to the *Hardy* case, he has ruled in Milwaukee's favor on important issues in these cases. The judge is troubled by what the evidence in these cases has shown thus far, but opinions developed during litigation, past or present, do not require recusal unless they "would make fair judgment impossible." *Liteky*, 510 U.S. at 555; see also *Frey v. E.P.A.*, 751 F.3d 461, 472 (7th Cir. 2014) (affirming denial of recusal where judge presided over series of related cases); *Diekemper*, 604 F.3d at 352 ("The statement that Diekemper is 'manipulative, narcissistic, and twisted … is a reflection of the facts before the district court.").

The third statement comes from a scheduling conference in *Caine v. City of Milwaukee*, 14-CV-01548. Judge Stadtmueller warned Milwaukee's attorneys that they should not repeat any "non-starter arguments that were raised" in other cases unless they want "to find themselves on the short end of the stick with sanctions." Milwaukee contends this warning shows a "deep-seated antagonism" because arguments

that are non-starters in one case may be reasonable in another. This argument is not persuasive.

Judges have discretion in running their cases, and "[a] judge's ordinary efforts at courtroom administration … remain immune" from charges of partiality, even if the judge exhibits "impatience, dissatisfaction, annoyance, and even anger." *Liteky*, 510 U.S. at 555–56. Effective case management sometimes calls for such warnings to avoid waste of time and distraction from the principal issues. Attorneys and parties who disagree with a judge's assessment of their positions have many remedies and protections, but recusal is not one of them except in extreme cases, and this is not one. Judge Stadtmueller's warning falls into the category of ordinary courtroom administration.

The final statement was made in the judge's opinion denying the motion to recuse. When explaining that he did not intend to say that defending these lawsuits is unconscionable, the judge noted that the phrase "those in [the] City that want to defend this sort of conduct" referred to "the City leadership who has elected to oppose the strip-search lawsuits without any indication of efforts to combat the systemic problems that gave rise to the suits in the first place." In Milwaukee's view, this reference to "systemic problems" shows "a bias so deep-seated that the judge does not appear to recognize that he has apparently already reached conclusions regarding issues central to these cases; namely whether the City has had, and continues to have, unlawful municipal policies or customs."

We disagree. Recognizing that there may be a "systemic problem" is not necessarily the same as saying that Milwaukee has a custom or policy that is unlawful. Judge Stadt-

mueller is presiding over a number of these cases. It is not surprising that he might draw conclusions about the nature of the issue or problem. We would expect him to look for and consider common threads and possible systemic problems to manage the cases effectively and decide them fairly. See Fed. R. Civ. P. 1. His comments do not raise a reasonable concern about the judge's impartiality unless they show antagonism so deep that he can no longer preside fairly. See *Liteky*, 510 U.S. at 555. Nothing we have seen, even considering all the challenged statements together, reasonably suggests such antagonism.

The petition for a writ of mandamus is DENIED.