**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 2, 2020[*]
Decided April 6, 2020

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-1653

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *Plaintiff-Appellee,* | |
| *v.* | No. 1:11-cv-00370-JMS-TAB |
| TIMOTHY S. DURHAM, | Jane Magnus-Stinson, |
| *Defendant-Appellant.* | *Chief Judge.* |

**O R D E R**

Based on Timothy Durham's criminal convictions for violating the Securities Exchange Acts of 1933 and 1934, a judge found him civilly liable for those violations as well. Durham does not dispute the existence of the criminal judgment. Rather, he argues that this judgment is nonfinal, and thus has no preclusive force, because of his

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

pending collateral attack on his convictions. We affirm because a criminal conviction is a final judgment with preclusive effect, despite any pending, post-judgment challenges.

Between 2002 and 2009, Durham and co-conspirators perpetuated a widespread financial fraud involving the sale of investment certificates, which are classified as "securities" under the Securities Acts. 15 U.S.C. § 78c(a)(10). The victims, many of whom were elderly and living on modest incomes, lost over $200 million. A jury found Durham guilty of securities fraud, and he received a sentence of 50 years in prison. 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5. We affirmed his conviction and sentence. See *United States v. Durham*, 630 F. App'x 634 (7th Cir. 2016) (sentence); *United States v. Durham*, 766 F.3d 672 (7th Cir. 2014) (conviction). His collateral attack under 28 U.S.C. § 2255 (for ineffective assistance of counsel) is still pending.

While Durham's criminal trial was pending, the Securities and Exchange Commission filed a civil suit against him based on the events underlying the criminal prosecution. The district court stayed the civil suit pending resolution of the criminal charges. After we affirmed Durham's convictions and sentence, the Commission moved for summary judgment, arguing that the jury's factual finding of Durham's criminal guilt required the court to find that he was civilly liable also.

Before the district judge ruled on summary judgment, Durham moved for her recusal. He argued that her friendships with community leaders whom Durham considered his enemies biased her against him in the civil case. The judge—Jane Magnus-Stinson, who also had presided over the criminal trial without any recusal request—referred the matter to Judge Tanya Walton Pratt. In the referral order, Judge Mangus-Stinson stated that she was friendly with the people Durham had named, but she did not know of any personal conflicts they had with Durham. Judge Pratt credited Judge Magnus-Stinson's statement, found that the friendships alone did not actually bias her, and referred the motion back to Judge Magnus-Stinson. Relying on Judge Pratt's finding, Judge Magnus-Stinson determined that a reasonable observer could not conclude that she appeared biased and denied the recusal motion.

The district court then entered summary judgment for the Commission. The court reasoned that the statutes governing the criminal and civil charges were substantially similar; therefore, as a matter of collateral estoppel, the jury's findings of guilt under the criminal provisions were conclusive of Durham's civil liability. The court further ordered Durham to pay just over $620,000 in disgorgement. It relied on trial evidence showing that Durham received this sum in three payments from his fraudulent company and then transferred roughly those amounts to others.

On appeal, Durham first argues that the district court erred by applying the doctrine of collateral estoppel. He concedes that a *final* criminal judgment would support a finding of civil liability, but he contends that the criminal judgment is not final because his collateral attack on his conviction under 28 U.S.C. § 2255 is pending.

We disagree. Durham suggests a distinction between § 2255 motions premised on claims of ineffective assistance of counsel and those premised on other grounds that has no basis in the law. Regardless, in criminal cases, "[f]inal judgment … means sentence. The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212 (1937). And "a judgment's preclusive effect is generally immediate, notwithstanding any appeal." *Coleman v. Tollefson*, 135 S. Ct. 1759, 1764 (2015); *Williams v. C.I.R.*, 1 F.3d 502, 504 (7th Cir. 1993) ("[A] judgment final in the trial court may have collateral estoppel effect even though the loser has not exhausted his appellate remedies."). This norm is even stronger in the context of a collateral attack, because the direct appeals are finished. See *Webb v. Voirol*, 773 F.2d 208, 211 (8th Cir. 1985) (state-law collateral attack on conviction did not render it non-final for preclusion purposes). The district court, therefore, rightly applied preclusion principles on summary judgment.

Durham next contends that the disgorgement—based on the three payments the Commission identified—is invalid because he did not personally benefit from those payments. We review for abuse of discretion the disgorgement calculation. See *Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1642–43 (2017); *S.E.C. v. Williky*, 942 F.3d 389, 393 (7th Cir. 2019). But even under de novo review, Durham's contention that the district court needed to find that he personally used the funds is unfounded. Disgorgement is measured by the defendant's wrongful gain. *Kokesh*, 137 S. Ct. at 1640. To calculate disgorgement, courts focus on the sum derived through the fraud, not on how the fraudster used the money. See, *e.g.*, *S.E.C. v. Koenig*, 557 F.3d 736, 745 (7th Cir. 2009) ("pecuniary gain" for defendant's disgorgement calculation was "amount he obtained by his fraudulent accounting"). The trial evidence showed that Durham received three payments totaling around $620,000 from his fraudulent company; it does not matter that he transferred those funds to others.

Durham replies that these transfers were legitimate business expenses. But he offers nothing to show—as he must to challenge the district court's calculation—that the transferred funds came from a source other than the ill-gotten gains from his fraud. See *S.E.C. v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014) ("Once the SEC has produced a reasonable approximation of the defendant's unlawfully acquired assets, the burden shifts to the defendant to demonstrate the SEC's estimate is not reasonable.");

*S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1261–62 (9th Cir. 2013) (same). Therefore, the order to disgorge the funds was proper.

Last, Durham challenges the denial of his recusal motion. He argues that, in ruling that Judge Magnus-Stinson was not biased against him in this case, Judge Pratt improperly credited Judge Magnus-Stinson's statement that she did not know of his conflicts with her friends. To show that the judge *did* know about the conflicts, he points to a witness from the criminal trial, whose testimony Judge Magnus-Stinson heard. The witness said that "Durham made between 15 and 20 million" in profit from a hostile takeover of a company owned by one of Judge Magnus-Stinson's friends. (He also notes that local news media reported on the takeover.) But this evidence is about a business deal; it does not show that Judge Pratt clearly erred in finding that Judge Magnus-Stinson did not know about any *personal* hostilities. See FED. R. CIV. P. 52(a)(6). So, a reasonable observer would not question Judge Magnus-Stinson's impartiality. See *In re City of Milwaukee*, 788 F.3d 717, 719–20 (7th Cir. 2015). In any event, we have reviewed Judge Magnus-Stinson's merits rulings de novo, so Durham has received an impartial decision. See *Williamson v. Indiana Univ.,* 345 F.3d 459, 464-65 (7th Cir. 2003). The other grounds Durham raises as evidence of bias—adverse rulings in both the criminal and civil cases—cannot support a finding of bias either. See *Liteky v. United States*, 510 U.S. 540, 556 (1994).

AFFIRMED