[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13002

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANNAMALAI ANNAMALAI,
a.k.a. Dr. Commander Selvam,
a.k.a. Swamiji Sri Selvam Siddhar,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

D.C. Docket No. 1:13-cr-00437-TCB-CMS-1

_____

Before BRANCH, GRANT, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Following a lengthy trial in 2014, a jury convicted Annamalai Annamalai of 34 criminal offenses. *See United States v. Annamalai*, 939 F.3d 1216, 1222 (11th Cir. 2019) (*Annamalai I*). On appeal, we reversed some of the convictions and remanded for resentencing. *Id.* at 1225–35, 1238–39. The district court resentenced Annamalai to 216 months' imprisonment followed by five years' supervised release. In this appeal from his resentencing, he argues that: (1) the district court erred in failing to conduct a *de novo* resentencing; (2) the district court erred in failing to recuse itself from the resentencing proceedings; and (3) his sentence is procedurally and substantively unreasonable. After careful review, we affirm.

## I.    Background

### A.  Annamalai's Trial and Direct Appeal

Annamalai, "a self-proclaimed Hindu priest," ran the Hindu Temple and Community Center of Georgia, Inc., in Norcross, Georgia from 2005 to 2009. *Annamalai I*, 939 F.3d at 1221. "The Hindu Temple generated income in part by charging fees for religious and spiritual products and services, including religious ceremonies and horoscopes." *Id.* "The evidence at trial showed

that Mr. Annamalai used the Hindu Temple as part of a criminal scheme to defraud his followers and commit bank fraud." *Id.* Specifically, he made unauthorized transactions on his followers' credit cards, and then, if they complained, he would cite to the temple's "no refund" policy. *Id.* On other occasions, he "would publish detailed stories of the followers' confidential personal struggles in [the temple's] magazine." *Id.* He also submitted false documents, altered audio recordings, and other false information to banks and law enforcement to justify the fraudulent charges. *Id.* He "used the fraud proceeds to fund a lavish lifestyle, including multiple homes and expensive cars." *Id.*

The Hindu Temple shut down after it filed for bankruptcy. *Id.* at 1221–22. Undeterred, Annamalai started a second temple. *Id.* at 1222. A grand jury in the Northern District of Georgia indicted Annamalai on 34 counts, including conspiracy to commit bank fraud, bank fraud, filing a false federal income tax return, conspiracy to commit bankruptcy fraud, bankruptcy fraud, money laundering, making a false statement in writing, obstruction of justice, making false statements under oath in a bankruptcy proceeding, and conspiracy to harbor a fugitive. *Id.* The case proceeded to a lengthy 11-day trial, and the jury convicted Annamalai on all 34 counts. *Id.* The district court sentenced him to a total of 327 months' imprisonment. *Id.*

On appeal, we reversed Annamalai's convictions for bankruptcy fraud (Counts 11–20), conspiracy to commit bankruptcy fraud (Count 10), money laundering (Counts 21–30),

and conspiracy to harbor a fugitive (Count 34). *Id.* at 1228–35. We also determined that the district court erred in its loss amount determination related to the bank fraud counts. *Id.* at 1235–38. We summarily affirmed several other sentencing enhancements that Annamalai challenged, including "the enhancement for the number of victims, the enhancement for abuse of trust, the enhancement for vulnerable victims, the enhancement for sophisticated means, [and] the enhancement for role in the offense." *Id.* at 1239 n.5. Because the loss amount affected the guidelines calculation, we remanded the case for resentencing with instructions for the district court to set the loss amount "at more than $70,000 but less than $120,000 under [U.S.S.G.] § 2B1.1(b)(1)(E) of the 2013 Sentencing Guidelines." *Id.* at 1238–39 & n.5. We also instructed the district court to recalculate restitution on remand. *Id.* at 1239 n.5.

## B. *Annamalai's Resentencing*

On remand, Annamalai argued that he was entitled to a *de novo* resentencing and that the guidelines enhancements related to the number of victims and vulnerable victims should not apply.[1] The government argued that because we affirmed the application of those guidelines enhancements in *Annamalai I*, those determinations were binding on the district court under the law of the case doctrine. Following a hearing on the scope of

---

[1] Under his proposed revised calculations, his advisory guidelines range would be 63 to 78 months' imprisonment.

resentencing, the district court concluded that, based on our decision in *Annamalai I*, Annamalai was not entitled to a *de novo* resentencing. Rather, it determined that our mandate on remand was limited, and that it was simply to adjust the loss amount as directed, hear arguments regarding the 18 U.S.C. § 3553(a) sentencing factors, issue a new sentence, and recalculate restitution.

At the resentencing hearing, the district court first stated for the record that we correctly determined that the temple operation was not "entirely fraudulent," and that its prior conclusion otherwise was incorrect. Nevertheless, the court noted that there was still a "mountain of fraud" in the case based on Annamalai's convictions on the eight counts of bank fraud alone. The district court then determined that with the adjusted loss amount, Annamalai's base offense level was 33, which produced an advisory guidelines range of 135 to 168 months' imprisonment. Annamalai renewed his objections to the calculation, but he acknowledged that in light of the district court's prior rulings, the calculation was correct.

The government requested an upward variance sentence of 216 months' imprisonment and provided extensive argument as to why the § 3553(a) sentencing factors supported an upward variance. Specifically, the government argued that three overarching reasons warranted the requested sentence. First, the government pointed to the nature and circumstances of the offense—Annamalai took advantage of people who came to him

for help and counseling, and several victims testified during the first sentencing hearing that Annamalai threatened them when they confronted him about the stolen money.  Second, the government pointed to Annamalai's personal history and characteristics—he had a history of intimidating and harassing witnesses, as evidenced by threatening letters he sent following his trial, numerous frivolous and malicious lawsuits, and involuntary bankruptcy petitions, that he filed against witnesses after his convictions.  The government noted that Annamalai also impersonated a victim and corresponded with a Special Agent investigating the case, and he made false statements during his bankruptcy proceedings.  And he demonstrated a lack of remorse.  Third, the government argued that the requested sentence reflected the seriousness of the offense, promoted respect for the law, protected the public, provided adequate deterrence, and provided Annamalai an opportunity to receive much needed mental health treatment.

On the other hand, Annamalai's counsel requested a 63-to-78-month sentence, which with credit for the time served would result in his release.  His counsel maintained that the § 3553(a) factors supported a sentence in this range given (1) the nature of the offense—Annamalai only kept "a tiny fraction" of the money the temple received, and the church was not a total fraud;[2]

---

[2] He also reiterated his objection to the two guidelines enhancements related to the number of victims—which we affirmed on appeal—arguing that the number of victims who suffered an actual loss was substantially lower because

(2) Annamalai's mental and physical health conditions; (3) his troublesome family history; (4) that several years had passed since Annamalai filed the allegedly frivolous lawsuits against witnesses and most of the time the defendants in those suits were never served; (5) he had low scores on recidivism assessments; and (6) he would be deported upon completion of his sentence, which would protect the public against future crimes. Annamalai also made a statement to the court and apologized for his actions. He acknowledged that he had filed numerous lawsuits against individuals related to the case because he was mad, but he apologized, and noted that he had "100 percent backed off" over the last two years. He emphasized that he was in "extremely bad health" and begged the court for mercy.

The district court then discussed the § 3553(a) factors. In particular, the district court highlighted details of the underlying scheme—that Annamalai held "himself out as a high priest" and used his temples "as mere vessels through which he moved cash for his benefit"; "used the victims' vulnerabilities against them by manipulating, threatening, blackmailing, and defrauding them"; used victims' signatures from packages for "fraudulent purposes"; and obstructed justice to make it appear as though the victims had agreed to the unauthorized charges. The district court also noted that following his sentencing, he sent threatening letters to victims

---

many of the victims received the money back from their credit card companies.

and filed numerous frivolous and vindictive lawsuits and involuntary bankruptcy petitions against victims, witnesses, and others.  The district court noted that:

> In the initial sentencing I stated that Mr. Annamalai used false lawsuits to inflict pain and extort payment. He enjoyed preying on weak and vulnerable people. He, as a so-called man of the cloth, is a fraud.  He is heartless, and ruthless, he is not a holy man.[3]  I find that he is a veritable sociopath, a manipulative liar, swearing out multiple outrageous false affidavits, and repeatedly testifying falsely.

> At the original sentencing I stated that this was the worst obstruction of justice I had seen. And despite that fact, the defendant was unrepentant and incorrigible.  None of this has changed.  In fact, his just-described behavior following his original sentencing solidifies, if not intensifies, my views.  I can almost hear the cries of the victims who we heard from for two weeks and the defendant treated mercilessly. He is not entitled to mercy now, nor would mercy be just.

---

[3] Later, after the district court announced the sentence, Annamalai's counsel objected to the district court's statement that Annamalai was not a holy man, and the court clarified that whether Annamalai was a holy man was "not for [the court] to decide" and the court did not care whether Annamalai was a high priest or not.

21-13002                Opinion of the Court                    9

> I've read the victim impact statements, and many of
> them tell of the defendant's repeated threats. One of
> the victims testified at trial how the defendant
> responded when she resisted his misconduct. This is
> the one to whom Mr. Annamalai said, quote, *once
> you are in my clutches, only I can release you*, closed
> quote. This man is the opposite of remorseful. He
> committed crimes to cover up his fraud, and he
> intimidated witnesses, and obstructed justice. And he
> has filed scores of lengthy and frivolous motions and
> other documents in the case swelling the docket to
> almost a thousand filings. And from these, and
> everything else in the case, the great weight of other
> evidence, I can say colloquially he doesn't get it. The
> bottom line is that this man is evil.

(emphasis in original). Turning to the nature and circumstances of the offenses, the district court noted that Annamalai led "a highly-calculated scheme" that involved "preying on particularly vulnerable victims"—an act for which he had not shown genuine remorse. Regarding Annamalai's personal history and characteristics, the court noted that the psychologist on whom Annamalai relied found that Annamalai "exaggerated his mental illness symptoms, and that he [was] an unreliable historian who has a history of exaggeration, deceit, and manipulation" and "demonstrated . . . severe character pathology." The district court explained that "[o]nly a lengthy term of incarceration" would serve to promote respect for the law, provide just punishment, reflect the seriousness of the offense, protect the public from future crimes by

Annamalai, and provide him with needed medical care. The court noted that its determination was "the product of careful, solemn, and prolonged deliberation." The court stated that "[w]hile my contempt for Mr. Annamalai is without affectation, I have had ample opportunity for sedate reflection to consider what the sentence should be. It is in no way intended to punish the defendant for appealing the judgment of conviction. He got it right on appeal."

Annamalai's counsel moved for recusal of the district court judge, arguing that recusal was warranted based on the judge's contempt for Annamalai and because the court's comments did not "reflect the reality or reflect [this Court's] opinion" on direct appeal. The district court denied the motion. However, the court clarified its contempt comment, explaining that:

> I do hold him in contempt. Not in contempt of court . . . , but [for] what he did to these victims. What he did to these victims, I am offended by. And part of my job here is to vindicate the interest of the public. And there is nothing wrong with a trial judge being irritated at a criminal defendant who has caused untold amounts of misery to innocent victims. That is what I mean when I say I have this contempt for him.

The district court then imposed a sentence of 216 months' imprisonment, which was an upward variance from the guidelines

range, to be followed by five years' supervised release. Annamalai timely appealed.

## II.    Discussion

### A. *Whether* de novo *resentencing was required*

Annamalai argues that the district court erred and failed to comply with our mandate when it declined to conduct a *de novo* resentencing proceeding. Relying heavily on our decision in *United States v. Stinson*, 97 F.3d 466 (11th Cir. 1996), Annamalai argues that when a criminal sentence is vacated, the entire sentencing package (including any sentencing enhancements) is voided in its entirety, and the default result is that the defendant is to be resentenced *de novo*.

Generally, "when a sentence is vacated and the case is remanded for resentencing, the district court is free to reconstruct the sentence utilizing any of the sentencing components." *Stinson*, 97 F.3d at 469. If we remanded on a limited issue, however, our mandate restricts the range of issues the district court may consider on resentencing. *United States v. Tamayo*, 80 F.3d 1514, 1519–20 (11th Cir. 1996). The "district court when acting under an appellate court's mandate, cannot vary it . . . or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *Id.* at 1520 (quotations omitted). "The mandate rule is simply an application of the law of the case doctrine to a specific set of facts." *Id.* (quotations omitted). Furthermore,

"[b]ecause it is in the interest of judicial economy for the district court not to redo that which had been done correctly at the first sentencing hearing, we have held that there is nothing improper in the district court's limiting the scope of a resentencing proceeding." *Id.* (alterations adopted) (quotations omitted).

Based on our decision in *Annamalai I*, the district court determined correctly that our mandate on remand was limited. Annamalai raised a number of challenges related to his sentencing and the guidelines' calculations in *Annamalai I*. Specifically, he argued, among other grounds, that (1) the district court erred in determining that the loss amount was greater than $400,000 but less than $1,000,000, which resulted in a 14-level guidelines enhancement; (2) the district court erred in applying a four-level enhancement based on a finding that there were more than 50 victims of the bank fraud; (3) the district court erred in applying a two-level vulnerable victims enhancement; (4) his 327-month sentence was substantively unreasonable; and (5) the court erred in basing restitution on the total loss. *Annamalai I*, 939 F.3d at 1236, 1239 n.5.

We concluded that the evidence did not support the district court's determination as to the loss amount because the government's methodology for statistical extrapolation was flawed. *Id.* at 1236–38. Thus, we held that resentencing was required and we instructed the district court on remand to set the loss amount "at more than $70,000 but less than $120,000 under [U.S.S.G.] § 2B1.1(b)(1)(E) of the 2013 Sentencing Guidelines."

*Id.* at 1238. However, we "summarily affirm[ed]" among other enhancements "the enhancement for the number of victims . . . [and] the enhancement for vulnerable victims." *Id.* at 1239 n.5.[4]

In other words, we did not vacate the entire sentencing package in *Annamalai I.* Rather, we remanded with express instructions that the district court set the loss amount at a specific amount and resentence Annamalai. *Id.* at 1239 & n.5. We affirmed a variety of other sentencing enhancements, and those rulings were binding as law of the case on the district court. *United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005) ("The law of the case doctrine bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case."); *see also United States v. Amedeo*, 487 F.3d 823, 830 (11th Cir. 2007) ("The law of the case doctrine (and, by implication, the mandate rule) applies to findings made under the Sentencing Guidelines."); *Venn v. St. Paul Fire & Marine Ins. Co.*, 99 F.3d 1058, 1063 (11th Cir. 1996) ("Under the law of the case doctrine, both the district court and the appellate court are generally bound by a prior appellate decision of the same case."). Accordingly, contrary to Annamalai's contention, the district court was not free to revisit the sentencing enhancements that we affirmed in *Annamalai I. See United States v. Stein*, 964 F.3d 1313, 1324 (11th Cir. 2020) (holding,

---

[4] Because we were remanding for resentencing, we declined to address the substantive reasonableness of his sentence or the restitution issue, and we instructed the district court to recalculate restitution on remand. *Annamalai I*, 939 F.3d at 1239 n.5.

under similar circumstances to those present in Annamalai's case, that the mandate was limited and the district court determined correctly that it could not reconsider the forfeiture calculation); *United States v. Bordon*, 421 F.3d 1202, 1207 (11th Cir. 2005) (declining to consider defendant's claim that the district court improperly calculated the amount of loss "because this Court previously reviewed and affirmed the calculation" in the defendant's initial direct appeal).

## B. *Recusal from resentencing*

Annamalai argues that the district court erred in failing to recuse itself from his resentencing.

Section 455 of Title 28 of the United States Code sets forth two conditions for recusal.[5]    28 U.S.C. § 455(a)–(b).    First, subsection (a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  *Id.* § 455(a).  The question for purposes of § 455(a) "is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality, and any

---

[5] A defendant can also move for recusal of a judge based on bias or prejudice by "mak[ing] and fil[ing] a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." 28 U.S.C. § 144.  No such affidavit was filed in Annamalai's case.  Therefore, we will not discuss recusal under § 144.

doubts must be resolved in favor of recusal." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal citations and quotations omitted).

Second, under subsection (b), a judge must recuse himself "[w]here he has a personal bias or prejudice concerning a party . . . ." 28 U.S.C. § 455(b)(1); *see also Patti*, 337 F.3d at 1321 (explaining that recusal under subsection (b) is mandatory once it is established that any of the enumerated circumstances in (b) exist). "The bias or prejudice must be personal and extrajudicial; it must derive from something other than that which the judge learned by participating in the case." *Amedeo*, 487 F.3d at 828 (quotations omitted).

Importantly, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current . . . [or] prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.*; *see also United States v. Holland*, 519 F.3d 909, 914 (9th Cir. 2008) ("[T]he judge's conduct during the proceedings should not, except in the 'rarest of circumstances' form the sole basis for recusal under § 455(a)." (quoting *Liteky*, 510 U.S. at 555)). "We review a judge's decision not to recuse for an abuse of discretion." *Amedeo*, 487 F.3d at 828.

Annamalai argues that recusal was necessary under § 455(a) because an objective observer with full knowledge of the facts of the case would harbor a significant doubt about the trial judge's impartiality based on the judge's statements during the resentencing hearing.[6]  In support, he points to the trial judge's contempt comment, comments that were negative concerning Annamalai's character, and statements that he argues implied Annamalai was not a "man of the cloth" and that the temple was a total fraud.

We have reviewed the comments Annamalai highlights. While at times the judge was unwisely hostile toward Annamalai and disapproving of his character, when considered in context, the comments did not display a deep-seated antagonism that would make fair judgment impossible.  Rather, the comments reflect

---

[6] In its response brief, the government argued that the district court's statements did not reflect bias, but Annamalai argues that whether the district court was biased is not the correct standard.  Rather, he argues that the only relevant standard was "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality," and that "recusal under 28 U.S.C. § 455(a) does not require that the district court harbor actual bias against the defendant."  The government's apparent confusion stems from Annamalai's initial brief in which he referred frequently to the judge's "bias."  Regardless, it is clear that "at issue in the present case is an aspect of 'partiality' already addressed in [§ 455(b)], bias or prejudice." *Liteky*, 510 U.S. at 553 n.2.  And our task is to determine whether there is an "objective appearance" of such bias or prejudice—*i.e.*, "an objective appearance of improper partiality." *Id.*

"expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Liteky*, 510 U.S. at 555–56; *see also id.* at 550–51 ("The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice," because his opinion is the product of information acquired during the course of the proceedings.). Furthermore, all of the comments were based on information that the trial judge learned during the course of the underlying proceedings (which spanned several years). And "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current . . . [or] prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555; *see also In re City of Milwaukee*, 788 F.3d 717, 720 (7th Cir. 2015) ("Rarely will a judge's comments show such favoritism or antagonism unless those comments reflect at least some reliance on an 'extrajudicial source.'").

Indeed, other circuits have concluded similarly that recusal was not warranted based on similar comments to those made during Annamalai's resentencing. *See United States v. McTiernan*, 695 F.3d 882, 891–93 (9th Cir. 2012) (holding that recusal was not warranted based on trial judge's repeated statements that the

defendant was a liar and was "willing to lie whenever it suits his purpose"); *United States v. Pearson*, 203 F.3d 1243, 1252, 1277–78 (10th Cir. 2000) (holding recusal not warranted based on trial judge's remarks about the defendant's character, including that the defendant was "repulsive," "a punk, first class," "a manipulator . . . [who] runs whores . . . [and] lives off . . . women," "a predator," "someone who 'has [n]ever done anything decent in his life' and 'has nothing going for him,'" and "a poster boy for a life sentence in a federal penitentiary"). Accordingly, we conclude that the district court did not abuse its discretion in denying Annamalai's motion for recusal.[7]

---

[7] Annamalai argues that recusal was also necessary because the trial judge failed to comply with the "spirit and express mandate" of this Court because the trial judge (1) stated that Annamalai "a so-called man of the cloth" was not a holy man, despite our statement in *Annamalai I* that it is not for the government to opine on religious qualifications; (2) made comments that indicated that the judge continued to believe that the temple was a total fraud, despite our determination in *Annamalai I* that the temple was not a total fraud; and (3) in failing to conduct a *de novo* resentencing. First, Annamalai takes the trial judge's statements out of context. Although the trial judge stated that Annamalai was not a holy man, he clarified that whether Annamalai was a holy man was "not for [the court] to decide" and the court did not care whether Annamalai was a high priest or not. Second, the trial judge also acknowledged that Annamalai's operation was not a total fraud, but noted correctly that, even though the operation "was [not] entirely fraudulent," there was still "a mountain of fraud left standing" based on the eight counts of substantive fraud that we affirmed on direct appeal. Thus, an objective observer with full knowledge of the facts of this case would not entertain serious doubts about the trial judge's impartiality based on these statements. Third, as we explained above, the district court correctly declined to conduct

### C. The procedural and substantive reasonableness of Annamalai's sentence

Annamalai argues that his above guidelines 216-month sentence is procedurally and substantively unreasonable. He argues that his sentence is procedurally unreasonable because it is based on clearly erroneous facts that we rejected in *Annamalai I*. Similarly, he maintains that his sentence is substantively unreasonable because (1) there was no justification for the upward variance, and the district court (2) relied on clearly erroneous facts in determining the sentence, (3) allowed animosity toward Annamalai to influence its decision, and (4) failed to give proper consideration to the guidelines range.

We review a sentence for both procedural and substantive reasonableness under a deferential abuse of discretion standard. *See Gall v. United States*, 552 U.S. 38, 51 (2007). The burden rests on the party challenging the sentence to show "that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015).

In reviewing a sentence for procedural reasonableness, we "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to

_____

a *de novo* resentencing on remand, and, therefore, there is no basis for recusal on that ground.

consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008) (quoting *Gall*, 552 U.S. at 51).

After ensuring that a sentence is procedurally sound, we then consider the substantive reasonableness of the sentence in light of the totality of the circumstances, including the extent of any variance from the guidelines range. *See Gall*, 552 U.S. at 51. The district court must issue a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2), which include the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from future criminal conduct. *Id.* at 50 n.6; 18 U.S.C. § 3553(a)(2). The court must also consider the following factors: the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the advisory Sentencing Guidelines and pertinent policy statements of the Sentencing Commission; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1), (3)–(7). "[T]he district court need only 'acknowledge' that it considered the § 3553(a) factors, and need *not* discuss each of these factors . . . ." *Amedeo*, 487 F.3d at 833 (quotation and internal citation omitted). Importantly, the weight given to a particular § 3553(a) factor "is committed to the sound discretion of the district court," and it is not required to give

"equal weight" to the § 3553(a) factors. *Rosales-Bruno*, 789 F.3d at 1254 (quotation omitted). "A district court abuses its discretion when it (1) fails to consider relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*).

Extraordinary justification or "rigid mathematical formula[s]" are not required for a sentence outside the guidelines range, but the district court should explain why the variance is appropriate and the "justification for the variance must be sufficiently compelling to support the degree of the variance." *Id.* at 1186–87 (quotations omitted). We will "vacate the sentence if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (quotation omitted).

Annamalai argues that his sentence is procedurally unreasonable because it is based on clearly erroneous facts that we rejected in *Annamalai I*. Specifically, he points to statements that the district court made that he claims question whether he was a Hindu priest and imply that the temple operation was a total fraud. He maintains that the district court erred in relying on these factors when determining his sentence because in *Annamalai I* we rejected the contention that the entire temple operation was a total fraud,

and we also noted that it was not for the "government to pass on religious qualifications." *See Annamalai I*, 939 F.3d at 1225.

Annamalai takes the district court's statements out of context, and a review of the record confirms that the district court did not base the sentence on clearly erroneous facts. At the resentencing hearing, the district court stated:

> The over-arching theme of Mr. Annamalai's shocking misconduct involved his holding himself out as a high priest to victims, registering his temples as nonprofit corporations . . . and seeking payments from victims with reference to donations to the temple, building new temples, and deducting payments to him as charitable contributions for tax purposes, yet Mr. Annamalai used the temples as mere vessels though which he moved cash for his benefit. He held or controlled over 40 bank accounts in the names of himself, his wife, various temples among which he moved money without regard for the source. He used marketing materials to identify and deceive individuals most susceptible to his strategians, falsely advertising that he would assist in marital, family, health, and legal problems. He then used the victims' vulnerabilities against them by manipulating, threatening, blackmailing, and defrauding them. He obtained victims' signatures from packages he arranged to have delivered to them, and then used those signatures for fraudulent purposes.

21-13002                Opinion of the Court                23

When considered in context, it is clear that the district court was not questioning whether Annamalai was a high priest or basing its sentence on that improper factor.[8]   Rather, the court was summarizing the nature of the offense, which is a § 3553(a) factor that the court must consider, and its summary of the offense is consistent with our findings in *Annamalai I* that Annamalai used his position as a religious figure to prey on his victims.  939 F.3d at 1224 (holding that the "description of Mr. Annamalai and his temple as 'a scam' was a fair comment on the evidence," and noting that Annamalai was prosecuted for "a scheme in which he abused his position as a Hindu priest by, among other things, causing his followers' credit cards to be charged in excess of agreed amounts and without authorization, and submitting false documents to financial institutions to substantiate the unauthorized charges").

Furthermore, a review of the record confirms that the district court did not base the sentence on the improper conclusion that the temple operation was a total fraud.  The district court stated expressly at the resentencing hearing that that the operation was not a total fraud.  However, as the district court correctly noted, even though the operation "was [not] entirely fraudulent," there was still "a mountain of fraud left standing" based on the eight counts of substantive bank fraud that we affirmed on direct

---

[8] In fact, the district court later clarified that whether Annamalai was a holy man was "not for [the court] to decide" and the court did not "care" whether Annamalai was a high priest or not.

appeal.[9]  Thus, the district court's comment was a fair comment on the evidence, and the district court did not base the sentence on an improper factor.[10]  Accordingly, we conclude that the district court did not commit any procedural error.

Turning to the substantive reasonableness of the sentence, we conclude that Annamalai's 216-month above guidelines sentence is substantively reasonable.  Contrary to Annamalai's claim, the record demonstrates that the district court gave proper consideration to the guidelines range of 135 to 168 months' imprisonment, but it determined that the government's requested upward variance to 216 months' imprisonment was appropriate given the § 3553(a) factors.  There is no indication that any alleged animosity toward Annamalai affected the court's decision.  Rather, the record demonstrates that the sentence was based solely on the § 3553(a) factors, including Annamalai's personal history and characteristics and the nature and circumstances of the offense.

---

[9] We reject Annamalai's contention that there was not a "mountain of fraud" because "$12 million . . . came into the temple," and we held in *Annamalai I* that the government proved approximately $100,000 in loss amount— meaning that Annamalai received "only [0].8% of the temple's proceeds." First, as a matter of record, the temple received $10 million, not $12 million. *Annamalai I*, 939 F.3d at 1236.  Second, regardless of the loss amount, the record supports that there was substantial fraud in this case that spanned a number of years and involved numerous victims.

[10] Although Annamalai also argues that his sentence is substantively unreasonable because the district court relied on these allegedly improper factors, this argument necessarily fails for the same reasons discussed above.

21-13002                Opinion of the Court                25

The district court's stated reasons for the upward variance are "sufficiently compelling to support the degree of the variance." *Irey*, 612 F.3d at 1187 (quotations omitted). As the district court noted, Annamalai was the leader of a "highly-calculated scheme" that involved preying on "vulnerable victims through fraud, blackmail, and defamation"—a crime for which he demonstrated no remorse. And Annamalai took actions following the first sentencing to continue to harass witnesses and people who stood up to him.[11]

Furthermore, the district court made clear that the chosen sentence was "the product of careful, solemn, and prolonged deliberation," and that the upward variance was necessary to achieve the sentencing goals of general and specific deterrence and to protect the public—§ 3553(a) factors the court is directed to consider. Moreover, another indicator of the substantive reasonableness of the sentence is that Annamalai's sentence is well below the 30-year statutory maximum for each of the eight bank fraud counts. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (explaining that a sentence that is below the statutory maximum is an indicator of reasonableness).

---

[11] Annamalai repeatedly emphasizes that many of the individuals he initiated lawsuits against following his convictions were not served with those actions, but whether they were served is irrelevant. The fact remains that Annamalai took actions that were intended to harass and intimidate witness, and that type of action is a legitimate factor the district court may consider under § 3553(a) when determining the appropriate sentence.

Accordingly, given the totality of the circumstances, we conclude that the sentence is substantively reasonable.

### III.    Conclusion

Annamalai is not entitled to relief on any of his claims, and we affirm his sentence.

**AFFIRMED.**